IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO FLAVIO GARCIA,

    Petitioner,                        No. CIV S-10-0968 GEB DAD P

    vs.

KEN CLARK, Warden,                 ORDER AND

    Respondent.                FINDINGS AND RECOMMENDATIONS

                        /

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before the court are: (1) petitioner's March 21, 2011, and June 29, 2011 motions for leave to amend his habeas petition to add additional claims; (2) petitioner's May 2, 2011 motion to substitute the correct respondent in this action; and (3) petitioner's November 23, 2011 motion for judicial notice. The court will address these motions in turn below.

**A. Background**

        Petitioner's crime of conviction and the resulting sentence imposed were described by the California Court of Appeal for the Third Appellate District as follows:

/////

1

> Defendant Mario Garcia appeared on a video surveillance tape leaving the Thunder Valley Casino with Christie Wilson early in the morning of October 5, 2005. They were last seen walking towards his car. Wilson was never seen again and her body was never found. A jury convicted defendant of first degree murder (Pen. Code, § 187) of Wilson and possession of a deadly weapon (Pen. Code, § 12020, subd. (a)(1)). The court found true allegations that defendant had a prior serious felony conviction (Pen. Code, §§ 667, subds. (a) & (b)-(i); 1170.12, subds. (a)-(d)). Sentenced to 59 years to life in state prison (25 years to life for the murder, doubled, plus four years for the weapons charge and five years for the prior felony enhancement), defendant appeals.

(Resp't's Lod. Doc. No. 1 at 1-2.) Petitioner filed his federal habeas petition in this court on April 21, 2010. Therein, he raises nineteen grounds for federal habeas relief. Respondent filed an answer on September 22, 2010, and petitioner filed a traverse on December 13, 2010. The petition is now submitted for decision.

**B. Motions to Amend Habeas Petition**

    **1. March 21, 2011 Motion to Amend**

On March 21, 2011, petitioner filed a motion for leave to amend his habeas petition to add several additional claims. Petitioner explains that the purpose of the motion is to "bring the Court's attention to further support Petitioner's ineffective assistance of counsel and insufficiency of the evidence for felony murder claims." (Doc. No. 66 at 2.) Petitioner argues that jury instructions on kidnapping given at his trial constituted a "constructive amendment" of the original charges against him of first degree murder and possession of a dangerous weapon. (Doc. No. 53 at 1-2.) He argues that the giving of these jury instructions deprived him of adequate notice of a new charge of "murder based on kidnapping." (Id.) Petitioner contends that he was "charged with murder in the first degree and possession of a dangerous weapon, but the jury instructions permitted conviction for murder based on kidnapping." (Id. at 3.) He alleges that the variance between the original charges and the jury instructions on kidnapping was "sufficiently material to constitute a constructive amendment, that was per se prejudicial, and warrants reversal of Petitioner's convictions." (Id.)

Petitioner also argues that because the instructions on kidnapping were given near the end of trial, his trial counsel was unable to prepare a defense to a charge of felony-murder based on kidnapping. (Id. at 4.) Petitioner notes that his trial counsel objected to the late inclusion of the instructions on kidnapping to the jury charge. (Id.) Specifically, defense counsel argued that the instructions required him to "argue this case totally different" and that this violated petitioner's right to due process. (Id.) Petitioner argues that in this way he was "given insufficient notice of the charges against him and was deprived of any defense in violation of the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution." (Id. at 2.)

Petitioner further argues that his trial counsel rendered ineffective assistance in failing to prepare an adequate defense to a kidnapping charge, and that his appellate counsel rendered ineffective assistance by failing to raise on appeal this "'dead-bang winner' issue – the fatal variance." (Id. at 4-5.) Petitioner contends that both his trial and appellate counsel failed "to understand even the basic elements of the charged offenses." (Id. at 5.) He explains that the "dispositive issue(s) this motion advances are that (1) a constructive amendment of the charges occurred when the jury was permitted to convict Petitioner upon a factual basis that effectively modified an essential element of the offense charged and (2) defense counsel was ineffective for not preparing a proper defense against kidnapping." (Id.) Petitioner informs the court that he did not present these claims earlier, either in state court or in this court, because he did not discover the claims until he obtained his trial transcripts from his appellate counsel "in October of 2010." (Id.)

In opposition, respondent counters that petitioner's motion to amend should be denied because the claims he proposes to add lack merit and are untimely and unexhausted. (Doc. No. 61 at 2.) Respondent also argues that petitioner has failed to demonstrate his entitlement to stay and abeyance of the instant petition in order to exhaust his claims in state court. Addressing the merits, respondent asserts that petitioner "had sufficient notice that he was

/////

being charged with murder as well as the prosecution's theory of felony murder with respect to that charge." (Id.)

Respondent also argues that petitioner's trial counsel did not have a duty to prepare a defense against a kidnapping charge because petitioner was not charged with kidnapping. (Id. at 8.) He asserts that defense counsel adequately prepared to defend against a charge of felony-murder predicated on a kidnapping. (Id.) Respondent argues that the defense theory presented by petitioner's counsel was applicable to both of the prosecution's theories of murder: murder based on malice aforethought and felony murder. (Id.) Respondent also notes that petitioner has failed to propose what his trial counsel should have done to structure his defense differently. (Id.) Finally, respondent argues that petitioner has failed to demonstrate prejudice with respect to his claims of ineffective assistance of counsel.

In his reply, petitioner concedes that he was provided adequate notice of the charge of felony murder predicated on a kidnapping. (Doc. No. 66 at 6, 8.) He "commends Respondent for clearly and honestly pointing out when and how his defense counsel received sufficient notice that their client was being charged with murder as well as the prosecution's theory of felony murder with respect to that charge." (Id. at 6.) In light of this concession, petitioner now narrows his arguments in the motion to amend to "whether defense counsel failed to adequately prepare a defense to the prosecution's theory of felony murder predicated on kidnapping." (Id. at 8-9.)[1]

In this regard, petitioner argues that his trial counsel "completely and inexplicably misunderstood the law of felony murder and should have been within their grasp to have

---

[1] Even if petitioner had not effectively withdrawn his claim that he was provided inadequate notice of the charge of first degree murder based on a felony-murder/kidnapping theory, he would not be entitled to add such a claim to the instant federal habeas petition because it plainly lacks merit. As explained by respondent in his opposition to the motion to amend, petitioner clearly had sufficient notice that he could be convicted of first degree murder on a theory of felony-murder based on a kidnapping. See Doc. No. 61 at 4-6; Resp't's Lod. Doc. 13, Reporter's Transcript on Appeal (RT) at 444, 4090-92, 4096; Resp't's Lod. Doc. 14, Clerk's Transcript on Appeal (CT) at 808-13, 1070-77, 1080.

4

prepared a defense that included kidnapping." (Id. at 6.) Petitioner specifically faults his trial counsel for failing to understand the nature of the charges against petitioner; failing to conduct sufficient legal research; failing to conduct sufficient pre-trial investigation including the hiring expert witnesses; and failing to present a defense that corroborated petitioner's trial testimony and adequately responded to the prosecutor's theory of the case. (Id. at 4-6, 9-11.) Petitioner suggests numerous actions his trial counsel should have undertaken, such as visiting the crime scene, interviewing witnesses and employing various experts. (Id. at 10-11.) He argues that his trial counsel's failures were prejudicial because, absent those errors, "there would have been available forensic testimony that would have contradicted the prosecution's explanation of the events that transpired, and would have strongly supported the defense's version of the facts including Petitioner's testimony." (Id. at 9.) Petitioner further explains that "a forensic explanation of the source of the blood stain on the back seat could have supported Petitioner's account." (Id. at 10.)[2]

Under Federal Rule of Civil Procedure 15(a), a habeas petitioner may amend his pleadings once as a matter of course before a responsive pleading is served and may seek leave of court to amend his pleading at any time during the proceeding. Mayle v. Felix, 545 U.S. 644, 654 (2005). Although leave of court should be given freely, a court may deny a motion to amend if the motion is made in bad faith, there would be prejudice to the opposing party, the amendment would be futile or would delay the action, or if the party acted in a dilatory fashion in seeking to

---

[2] In response to respondent's position that his proposed new claims have not been properly exhausted in state court, petitioner argues that he is not seeking to raise new claims in his proposed amended petition, but is only attempting to supplement his existing ineffective assistance of counsel claim with additional allegations in order to "assist the Court in reviewing Petitioner's contentions." (Doc. No. 66 at 3, 8.) Notwithstanding this statement, the court construes petitioner's motion to amend as seeking to add additional ineffective assistance of counsel claims to his federal habeas petition. Moreover, post-traverse supplemental briefing to add additional arguments in support of already presented claims is not contemplated or permitted by the federal rules governing habeas corpus cases and is not necessary in this case. See Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. Accordingly, to the extent petitioner is now requesting permission to supplement the petition to add additional facts and argument, his request is denied.

amend. Foman v. Davis, 371 U.S. 178, 182 (1962); AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006); Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004) (applying these factors in a habeas case); Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) (same). "Prejudice to the opposing party is the most important factor." Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971).

Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were or should have been apparent early. Bonin, 59 F.3d at 846. Such facts might also support a finding that the party acted in a dilatory fashion when seeking to amend. Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999). A motion to amend a pleading is addressed to the sound discretion of the court and must be decided upon the facts and circumstances of each particular case. Sackett v. Beaman, 399 F.2d 884, 889 (9th Cir. 1968). "[A] district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." Bonin, 59 F.3d at 845 (citing Allen v. City of Beverly Hills, 911 F.2d 367, 374 (9th Cir. 1990)).

For the reasons set forth below, this court recommends that petitioner's motion for leave to amend be denied as futile because petitioner's proposed new ineffective assistance of counsel claims fail on their merits. In light of this recommendation, the court will not reach respondent's contentions that these claims are also time-barred and unexhausted. See 28 U.S.C. § 2254(b)(2) (an application for a writ of habeas corpus "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Green v. White, 223 F.3d 1001, 1003-04 (9th Cir. 2000) (AEDPA's statute of limitations is not jurisdictional).

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective

6

standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Strickland standards apply to appellate counsel as well as trial counsel. Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

Petitioner has failed to adequately allege or establish deficient performance or prejudice with respect to his proposed new claim that his trial counsel rendered ineffective assistance in failing to investigate and present an adequate defense to the charge of felony-murder based on kidnapping. Although petitioner makes general allegations regarding his trial counsel's deficiencies, he has not specified what his trial counsel should have done differently to adequately prepare a defense against the charges brought against petitioner. Petitioner's conclusory allegations that further investigation, or the hiring of various experts, would have resulted in a different verdict are clearly insufficient to establish either deficient performance or prejudice. See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)). Further, although petitioner complains that his trial counsel failed to call witnesses who could have corroborated petitioner's trial testimony, petitioner has not identified any witnesses who would have testified in his favor nor has he presented any evidence as to what any witness would have testified to which would have aided the defense. See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (speculating as to what expert witness would say is not enough to establish prejudice); Grisby v. Blodgett, 130 F.3d 365,

373 (9th Cir. 1997) (same); United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify); United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing).

Petitioner also fails to specify what his trial counsel should have done at the crime scene, what further legal research counsel should have conducted, or how additional "investigation" would have helped petitioner's case. Speculation that the verdict would have been different had trial counsel performed to petitioner's satisfaction is insufficient to establish ineffective assistance of counsel. Petitioner has also failed to adequately allege and demonstrate that his appellate counsel rendered ineffective assistance in failing to raise a claim of ineffective assistance of trial counsel, or any other meritorious claim, on appeal.

In sum, petitioner's proposed new ineffective assistance of counsel claims are conclusory, lack support, and fail to demonstrate that petitioner suffered prejudice as a result of the performance of his trial and appellate counsel. Adding these proposed new claims to petitioner's habeas petition would be futile and prejudicial to the respondent at this late date. Accordingly, petitioner's motion to amend filed March 21, 2011, should be denied.

**2. June 29, 2011 Motion to Amend**

On June 29, 2011, petitioner filed another motion to amend his pending federal habeas petition seeking to add a claim that the trial prosecutor committed misconduct in intimidating "critical" defense witness William Pence through the actions of the prosecutor's investigators. (Doc. No. 70 at 1.) Petitioner contends that the prosecutor's interference with Mr. Pence was "violative of Petitioner's compulsory-process right to subpoena a defense witness free of intimidation and harassment from and by the prosecution." (Id. at 2.) Petitioner explains that he raised this claim for the first time in his traverse. (Id.; see also Doc. No. 44 (Traverse) at 79-

1  82.) He states that he did not become aware of the claim until he noticed respondent's argument
2  in the answer that William Pence was not a credible witness.  As a result of this argument
3  advanced by respondent, "sometime at the end of September 2010," petitioner began to read his
4  trial transcripts and discovered that the prosecutor had committed misconduct in his dealings
5  with Mr. Pence.  (Doc. No. 70 at 2; Doc. No. 76 at 4.)  Petitioner clarifies that "it is a claim
6  brought forward in responce [sic] to Respondent's allegations about William Pence in his
7  Answer."  (Doc. No. 70-1 at 1.)  Petitioner further explains that, after reading the trial record, he
8  "realized this was a valid claim that needed to be raised and added to his federal habeas corpus
9  petition."  (Doc. No. 70 at 2-3.)  Petitioner argues that his trial and appellate counsel rendered
10 ineffective assistance in failing to raise this issue, either at trial or on direct appeal, thereby
11 establishing "cause" for petitioner's failure to present this claim earlier.  (Id. at 4.)  Petitioner also
12 seeks to add a claim that his appellate counsel was ineffective in failing to raise this "dead-bang
13 winner" issue on appeal.  (Doc. No. 76 at 4.)

14          The background to petitioner's proposed new prosecutorial misconduct claim is
15 as follows.  On October 17, 2006, the trial court prosecution filed a motion to permit
16 impeachment of proposed defense witness William Pence "as to prior acts of untruthfulness and
17 capacity to perceive and recollect."  (CT at 908-17.)  The prosecutor's motion explained that Mr.
18 Pence was expected to testify that he had seen victim Christie Wilson in Folsom, California on
19 either October 5 or October 6, 2005, after she disappeared from Thunder Valley Casino.  (Id. at
20 908.)  The prosecutor argued that he was entitled to introduce evidence that Pence had been
21 convicted of driving under the influence of alcohol (DUI) on July 12, 2006, and that the police
22 had received a report that Pence was drunk in public on June 29, 2005.  (Id. at 911-12.)  The
23 prosecutor argued that Pence's "history of excessive alcohol consumption [bore] directly on his
24 capacity to perceive the events that he is expected to testify to."  (Id.)

25          On November 8, 2006, the defense filed an opposition to the prosecutor's motion
26 to permit the impeachment of William Pence and a motion to dismiss the case based on

9

"prosecution intimidation of William Pence." (Id. at 1057-63.) Therein, petitioner's trial counsel argued that Pence had been intimidated by a prosecution investigator in order to discourage him from testifying, and that Pence was now no longer willing to testify. (Id. at 1059.) The motion argued that "in the event that Mr. Pence does not appear and give his anticipated and previously discovered testimony, the prosecution will have succeeded in depriving the defendant of his right to a fair trial, his right to present evidence on his own behalf, his right to due process of law, and his right to compulsory process." (Id. at 1063.)

On November 8, 2006, the prosecution also filed a response to petitioner's motion to dismiss, along with investigative reports prepared by District Attorney Investigators Nino Tavares and Dave Wells, and a declaration by lead prosecutor Garen Horst. (Id. at 1041-56.) Investigator Tavares's report described his interaction with defense witness Pence. That report explained, in part:

> I told Pence that the prosecution wanted to let him know ahead that they were aware of the DUI that he received earlier in the year. I explained to Pence that the information had to be presented before a judge prior to it being admitted into court and that both sides had to litigate the issue before the information became relevant in court. Pence told me that he was very ashamed of and embarrassed about the DUI and did not want that becoming an issue in the media and possibly risk his friends and family finding out. I told Pence that I would pass his concerns to the attorneys involved. Pence told me that he no longer wanted to testify. I told Pence multiple times during our conversation that my reason for bringing this up with him was not an effort to discourage him from testifying and that the judge had not made a decision yet about the DUI being admitted. I told Pence several times that I was giving him a heads up so that he would not be blind sided. Pence told me he understood and knew that I was not trying to discourage him from testifying.

(Id. at 1049-50.)

The prosecutor's declaration related the following. As part of the prosecutorial investigation, "a decision was made" that an investigator would "ask [Pence] about his drinking and inform him that we knew about the DUI so that he wasn't surprised by that information." (Id. at 1051-52.) After investigator Tavares spoke to Pence, Tavares called the prosecutor and

10

informed him of Pence's "reaction and concerns." (Id. at 1052.) The prosecutor then called petitioner's counsel, informed him of the substance of the conversation between Tavares and Pence, and told him of Pence's reaction. (Id.) The prosecutor informed petitioner's counsel that "if he had any problems getting [Pence] to court, I would offer law enforcement assistance to facilitate his presence in court." (Id.) The prosecutor denied that there was any attempt to intimidate Mr. Pence or dissuade him from testifying. (Id.)

In his investigative report, District Attorney Investigator Dave Wells stated that he was "assigned to conduct follow-up investigation" in order to "try and locate any individuals who may be familiar with" witness Pence. (Id. at 1055-56.) He described his interviews with several people in Folsom regarding Pence's alcohol consumption habits. (Id.)[3]

William Pence testified at petitioner's trial. (Id. at 3795-3839.) His testimony was described by the California Court of Appeal as follows:

> William Pence was in Folsom on October 5 and saw a woman. She asked if he knew where Thunder Valley Casino was. She explained she had had too much to drink the night before and left her car in the parking lot. She was trying to get back. When he told her the casino was 20 to 30 miles away, she said she would walk. When the police showed Pence a photographic lineup, he could not identify Wilson as the woman he saw. He thought she was wearing a sundress and perhaps sandals. After he heard about Wilson's disappearance on the radio, he saw a picture of her on the internet and was 70 to 75 percent sure she was the woman he saw.

(Resp't's Lod. Doc. No. 1 at 21-22.)

In his opposition to the instant motion to amend, respondent argues that petitioner should not be allowed to amend his pending federal habeas petition to add this claim of prosecutorial misconduct because the claim is untimely and lacks merit. (Doc. No. 73 at 2.) Respondent explains that the prosecutor did not intend to intimidate Mr. Pence and argues that the investigator's remarks to Pence did not constitute "coercion or threats to Pence in an attempt

---

[3] After hearing argument, the trial court denied petitioner's motion to dismiss on the grounds of prosecutorial misconduct. (RT at 3752.)

to dissuade him from testifying." (Id. at 8.) Respondent also argues that any prosecutorial misconduct did not result in prejudice to petitioner because Pence in fact testified at petitioner's trial about his conversation with the woman he saw in Folsom after the disappearance of Christie Wilson. (Id. at 8-9.) Respondent also argues that there is no evidence the investigator's interaction with Pence affected the substance of Pence's trial testimony or his demeanor on the witness stand. (Id. at 9.)

In his reply, petitioner argues that the actions of the prosecutor's investigators were "of such character as to transform defense witness (Pence) from willing witness to one reluctant to testify." (Doc. No. 76 at 17.) Petitioner argues that the prosecutor capitalized on Pence's reluctance to testify by "intimidat[ing] and exploit[ing] Pence's emotional state and demeanor while on the stand and to which was the result of the efforts to intimidate him." (Id.) Petitioner also contends that the investigator's conversation with Pence "amounted to a warning." (Id. at 18.) He argues that the prosecutor "singled out the defendant's only witness" in an attempt to intimidate him or prevent him from testifying. (Id.) Petitioner also argues that the identification procedure used with Mr. Pence to determine whether he saw Christie Wilson was unfair and impermissibly suggestive because the picture of Christie Wilson contained in the photographic display did not look like Wilson. (Id. at 18-19.)

Petitioner notes that he did not have a prior relationship with Pence, who voluntarily contacted the police to report that he had seen a woman who looked like Christie Wilson after she disappeared from Thunder Valley Casino. (Id.) Petitioner complains about the following actions by the prosecutor and/or his investigator: (1) in order to determine whether Mr. Pence saw the victim, or someone else, the police sergeant showed Pence photographs of several women and asked him if he could identify the woman he saw. Mr. Pence rejected the photograph of Christie Wilson. Petitioner argues that the photographic display was "suggestive and designed to trick and deceved [sic] Pence by including an arrest booking photo of Wilson, that [the sergeant], himself, knew and admitted in court, did not look like Wilson at all; (2) the police

sergeant told Pence he was "overreacting and that he should not worry about the matter anymore" when Pence called the Sheriff's Department after he was shown the photographic lineup to report that, after seeing another photograph of Christie Wilson on the internet, he was now "pretty confident" she was the person he had seen in Folsom; (3) Investigator Tavares contacted Pence prior to his planned testimony and "delivered a message from the prosecutor" that they were aware of Pence's DUI conviction; and (4) two prosecution investigators "conducted follow-up investigation to locate individuals familiar with Pence in an attempt to intimidate him by asking questions." (Id. at 16, 18-19.)

With respect to prejudice, petitioner argues that his murder conviction should be set aside even absent any showing of prejudice stemming from the prosecutor's misconduct "because the harmless error rule is inapplicable in this case to this constitutional violation." (Id. at 20.) Petitioner asserts that, in any event, he was prejudiced because the prosecutor and his investigators "engaged in activity and conduct that was wholly unnecessary to proper performance of their duties and of such character as to affect the testimony of a critical defense witness – in this case, the testimony of William Pence." (Id. at 21.) Petitioner contends that, even if no single action by the prosecutor and/or his investigator was sufficiently prejudicial, the cumulative affect of all of the actions of the investigator and the prosecutor vis a vis witness Spence resulted in prejudice. (Id. at 21-22.)

Petitioner also argues that he should be granted a new trial, where William Pence "can testify freely." (Id. at 21.) In support of his claim of prosecutorial misconduct, petitioner has filed the declaration of William Pence, signed on August 1, 2011. Therein, Mr. Pence declares that on the afternoon of October 5, 2005, he had a conversation with a woman in Folsom, California, and that he is "fairly certain (70% sure) that the young lady I met and had a brief conversation with in Folsom, California on the afternoon of Wednesday, October 5, 2005, was Christie Wilson." (Id. at 26.)

/////

For the reasons explained below, this court recommends that petitioner's motion for leave to amend be denied as futile because petitioner's proposed new claims of prosecutorial misconduct and ineffective assistance of appellate counsel fail on their merits. In light of this recommendation, the court will not reach respondent's contentions that these proposed new claims are also time-barred.

A criminal defendant's Sixth Amendment right to compulsory process for obtaining witnesses in his favor is implicated where the prosecutor "employs coercive or intimidating language or tactics that substantially interfere with a defense witness' decision whether to testify." United States v. Vavages, 151 F.3d 1185, 1189 (9th Cir. 1998) (concerning perjury warnings given by the prosecutor to a witness who then decided not to testify). Further, "[i]t is well established that substantial government interference with a defense witness' free and unhampered choice to testify amounts to a violation of due process." Earp v. Ornoski, 431 F.3d 1158, 1170 (9th Cir. 2005) See also Williams v. Woodford, 384 F.3d 567, 601-02 (9th Cir. 2004) ("Undue prosecutorial interference in a defense witness's decision to testify arises when the prosecution intimidates or harasses the witness to discourage the witness from testifying, for example, by threatening the witness with prosecution for perjury or other offenses."). "Where, under the totality of the circumstances, the substance of what the prosecutor communicates to the witness is a threat over and above what the record indicates is necessary, and appropriate, the inference that the prosecutor sought to coerce a witness into silence is strong." Vavages, 151 F.3d at 1189 (internal quotation marks and citations omitted).

Prosecutorial misconduct does not, per se, violate a petitioner's constitutional rights. Jeffries v. Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden, 477 U.S. at 181, and Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)). "A constitutional violation arising from prosecutorial misconduct does not warrant habeas relief if the error is harmless." Towery v. Schriro, 641 F.3d 300, 307 (9th Cir. 2010). Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the

14

1  prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a
2  denial of due process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).
3  See also Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v. DeChristoforo, 416 U.S. 637,
4  643 (1974); Turner v Calderon, 281 F.3d 851, 868 (9th Cir. 2002).  Prosecutorial misconduct
5  violates due process only when it has a substantial and injurious effect or influence in
6  determining the jury's verdict.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

       Assuming arguendo that the prosecutor's actions in directing the investigation of witness Pence constituted misconduct, petitioner has failed to allege or demonstrate any prejudice flowing therefrom under the circumstances of this case.  Notably, Mr. Pence testified at petitioner's trial and fully explained his interaction with a woman in Folsom on October 5, 2005. (RT at 3795-3839.)  He also testified under oath at petitioner's trial that he was "70 to 75 percent sure" that the woman he spoke to on October 5, 2005, was Christie Wilson.  (Id. at 3804.) Although petitioner argues in his traverse that "it is very likely and highly possible" that the actions of the prosecutor and investigator "engendered and affected [Pence's] emotional state and his demeanor while testifying in court," (Doc. No. 41 at 80), there is no evidence or even any indication in the state court record that this was the case.  The declaration of Mr. Pence filed by petitioner with this court in support of his motion to amend his petition essentially repeats the substance of the testimony Mr. Pence gave at trial and does not support petitioner's argument that the prosecutor engaged in misconduct.  Because petitioner has failed to adequately allege or demonstrate prejudice flowing from the actions of the trial prosecutor, petitioner's proposed new prosecutorial misconduct claim lacks merit.

       To the extent petitioner is challenging the photographic lineup shown to Mr. Pence in order to clarify whether the woman he saw in Folsom was Christie Wilson, petitioner has also failed to adequately allege or establish prejudice with respect to such a challenge. Regardless of whether Mr. Pence was able to identify Christie Wilson from the photographic display, he later testified at petitioner's trial that, after seeing her picture on the internet, he was

"70 to 75 percent sure" that Christie Wilson was the person he saw in Folsom on October 5, 2005. Accordingly, the allegedly flawed lineup procedure had no effect on Mr. Pence's favorable testimony for the defense at petitioner's trial.

Finally, because petitioner's claim of prosecutorial misconduct lacks merit, petitioner's appellate counsel was not ineffective in failing to raise this claim on appeal. Strickland, 466 U.S. at 687-88 (appellate counsel has no obligation to raise meritless issues on appeal).

Adding these two proposed new claims to petitioner's pending federal habeas petition would be futile and prejudicial to the respondent at this late date. Accordingly, petitioner's motion to amend filed June 29, 2011, should also be denied.

**C. Motion to Substitute the Correct Respondent**

On May 2, 2011, petitioner filed a motion to "change the respondent's name." (Doc. No. 62.) Petitioner informs the court that respondent Ken Clark has been succeeded by Kathleen Allison as the warden of the institution where petitioner is currently confined. (Id.) Petitioner requests the substitution of Kathleen Allison as the correct respondent in this matter. (Id.)

This court has independently confirmed that petitioner is currently held at the California Substance Abuse Treatment Facility and State Prison in Corcoran, California, and that Kathleen Allison is the warden of that institution. Accordingly, the court now substitutes in the correct respondent, the Warden of the California Substance Abuse Treatment Facility. See Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994) ("A petitioner for habeas corpus relief must name the state officer having custody of him or her as the respondent to the petition."); Rule 2(a), 28 U.S.C. foll. § 2254).

**D. Motion for Judicial Notice**

On November 23, 2011, petitioner filed a request that this court take judicial notice of the decisions in Hebbe v. Pliler, 627 F.3d 338 (9th Cir. 2010), opinion amended and

16

superseded by <u>Hebbe v. Pliler</u>, 627 F.3d 338 (2010); <u>Thomas v. Ponder</u>, 611 F.3d 1144 (9th Cir. 2010); <u>Allen v. City and County of Honolulu</u>, 39 F.3d 936 (9th Cir. 1994); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); and <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).  (Doc. No. 78.)  The court is aware of all of these decisions and will consider them, if appropriate, in connection with petitioner's application for federal habeas relief now pending before the court.  However, the court notes that published decisions of the Ninth Circuit Court of Appeals, which are binding on this court, are not the appropriate subject of judicial notice.  Accordingly, petitioner's motion for judicial notice will be denied as unnecessary.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's May 2, 2011 motion to substitute the correct respondent (Doc. No. 62) in this action is granted; and

2. Petitioner's November 23, 2011 motion for judicial notice (Doc. No. 78) is denied as unnecessary.

It is hereby RECOMMENDED that:

1. Petitioner's March 21, 2011 motion to amend (Doc. No. 53) be denied; and

2. Petitioner's June 29, 2011 motion to amend (Doc. No. 70) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district

1  court must issue or deny a certificate of appealability when it enters a final order adverse to the
2  applicant).
3  DATED: December 28, 2011.

                                            /s/ Dale A. Drozd
                                            DALE A. DROZD
                                            UNITED STATES MAGISTRATE JUDGE

DAD:8
garcia968.mos